Roscoe M. Dexter, Receiver
vs.
Alexander Gilbert, et al.

Eq. No. 10630.

DECISION.

December 5, 1931.

WALSH, J. Heard on bill, answer, replication and proof.

This is a bill in equity brought by the receiver of Alexander Gilbert, Inc., against Chester A. Gilbert and Alexander Gilbert. A decree pro confesso has been entered as against Chester A. Gilbert but Alexander Gilbert has filed his appearance and answer. The complainant seeks to impose liability for the debts of the corporation upon the respondents under the provisions of Chapter 248, Gen. Laws of R. I., 1923, and under the by-laws of the corporation.

There is no testimony in the case showing the assets in the hands of the receiver available for payment of corporate debts, no evidence as to when and where such debts were contracted, nothing to show when the corporation became insolvent or when its capital became impaired.

The complainant shows from the books of the corporation that during the years 1927, 1928, 1929, the total income received by the corporation was $63,927.59 and claims that the respondents are liable for $19,176.74 of this amount which was not put in bank; checks to cash and to Chester A. Gilbert amounting to $7,971.17; personal bills paid by corporation checks of $753.41 and checks of the corporation applied to payment of the personal notes of Chester A. Gilbert in the amount of $1,750, making a gross shortage on the books of $29,651.32. In addition, the complainant contends that he is entitled to $1,300, paid to Alexander Gilbert by corporation checks for alleged rent of garage and tenement of Chester A. Gilbert. If we add this to the shortage alleged from

the books, the gross deficiency for which complainant alleges respondents are liable is $30,951.32.

The charges in the bill against Alexander Gilbert are as follows:

(1) That as stockholder, he received dividends that were not surplus or net profits (paragraphs 18, 19, 20).

(2) That he as director voted for, directed and permitted dividends not from surplus or net profits (paragraphs 21 and 22).

(3) That he, as president, consented to loans of corporate funds to Chester A. Gilbert and himself (paragraph 25).

(4) That he used corporate funds for his private use and that of Chester A. Gilbert (paragraphs 24 and 27).

(5) That he collected accounts of the corporation and kept the proceeds (paragraph 29).

(6) That he had knowledge of payment of private bills out of corporate funds by Chester A. Gilbert (paragraph 30).

(7) That he conspired with Chester A. Gilbert to withdraw corporate funds by means of notes payable to Alexander Gilbert (paragraph 31).

(8) That he withdrew corporate funds amounting to $1,300 (paragraph 32).

The facts as shown by the evidence seem to be as follows: In 1921, Alexander Gilbert, who had conducted an undertaking business in Woonsocket for years, sold his business to one Chandler; that Chandler desired to take the business over in a corporate form; that to accommodate Chandler a corporation was formed; that Alexander Gilbert received in payment for his business 98 shares of the 100 shares authorized of the capital stock; that said shares were registered in the name of Alexander Gilbert on the stock books of the corporation and were never transferred on the books of the corporation thereafter; that

Alexander Gilbert offered his stock to the corporation for $9,000; that he later sold it to Chandler for $10,000, payment being made by notes running for three years, without endorsement; that the by-laws of the corporation provide that in case of the sale of stock by a stockholder the corporation shall have the right to purchase at the lowest price at which the stockholder is willing to sell before the stock is sold to another, and also provide that stock shall be transferred only on the books of the corporation; that in 1924 Alexander Gilbert bought this stock back from Chandler and it is fair to assume that he did so to enable his son, Chester A. Gilbert, to operate the business. Alexander Gilbert says he retained the stock certificates as security for the payment of the purchase price by his son, Chester A. Gilbert, and that he did not interfere with Chester A. Gilbert in his conduct of the business until August, 1929, when conditions in the business as operated by his son were not satisfactory to him; that in November, 1929, Alexander Gilbert took control of the business from Chester and as president of the corporation left a certificate at the bank, certifying that one Wallace had been elected treasurer of the corporation in place of his son, Chester A. Gilbert. It is contended that from 1924 to 1929 Alexander Gilbert held as security all the outstanding shares of stock in Alexander Gilbert, Inc.

The strong preponderance of the testimony in this case shows that Alexander Gilbert did not, as a stockholder, receive dividends that were not surplus or net profits. There is no evidence that he as director voted for, directed and permitted dividends not from surplus or profits. There is no evidence that he, as president, consented to loans of corporate funds to Chester A. Gilbert and himself. There is no evidence that he collected the accounts of the corporation and kept the proceeds. There is no evidence that

he conspired with Chester A. Gilbert to withdraw corporate funds by means of notes payable to Alexander Gilbert.

The charges (1) that Alexander Gilbert used corporate funds for his private use and that of Chester A. Gilbert; (2) that he had knowledge of payment of private bills out of corporate funds by Chester A. Gilbert, and (3) that he withdrew corporate funds amounting to $1,300, may be considered together.

There is no evidence of the financial condition of the corporation until August, 1929, and up to that time, so far as the testimony goes, the corporation was solvent. If Alexander Gilbert received corporate checks for the rent of the garage and tenement while the corporation was solvent, there was no interference with the rights of creditors for there were sufficient funds in the treasury to satisfy the claims of such creditors.

The only fair inference from the testimony is that Alexander Gilbert did not know that the corporation was approaching insolvency until August, 1929, and that there were no payments made to him after March 12, 1929, by Chester A. Gilbert. It is also a fair inference from the testimony that Alexander Gilbert paid very little attention to the manner in which the business was being conducted by the son until the summer of 1929 when creditors commenced to complain to him about non-payment of their bills.

In the absence of proof by complainant showing the assets in the hands of the receiver available for the payment of corporate debts or showing when and where such debts were contracted or when the corporation became insolvent or when its capital became impaired, coupled with the testimony of the respondent, Alexander Gilbert, that he held this stock as collateral only, had no supervision or control over the business until 1929, that his son owned and operated the business during the years 1927, 1928, 1929 up to August,

when Alexander Gilbert was obliged to take it over, and that during all the time complained of he received no other funds from the corporation except rent for his garage and tenement, we are obliged to conclude that the complainant has failed to make out his case against Alexander Gilbert by a fair preponderance of the evidence. Decision must therefore be for respondent, Alexander Gilbert.

Chester A. Gilbert is responsible for the insolvency of this corporation. Any reasonable person should have known that a gross business of $21,000 per year would not sustain a salary of $5,200 per year to its manager. He should be charged, therefore, with $15,600 wrongfully withdrawn as salary, (*Eaton* vs. *Robinson*, 19 R. I. 146), for the years 1927, 1928, 1929. The payment of $25 per week to a helper during the same period was a fair and reasonable charge and is allowed.

He also drew during this period checks to cash and to himself amounting to $7,971.17, but there is no evidence that this money was not actually expended for business purposes. Under these circumstances, we cannot charge Chester A. Gilbert with this amount. His personal bills of $753.41 paid with corporation's funds are properly chargeable against him as well as $1,750 paid with corporate funds on his personal notes.

### SUMMARY

Differences in cash not put
in bank .................$19,176.74
Minus amount paid to helper  3,900.00

Wrongfully charged as salary.... ..................$15,276.74
Personal bills .............    753.41
Corporation money paid on
personal notes ...........  1,750.00

Total due as of July 1, 1928.$17,780.15
Interest from July 1, 1928, to
December 3, 1931—3yrs. 5
mos. @ 6%..............  3,644.93

Total due from Chester A. Gilbert to date of this decision. . . . . . . . . . . . . . . . . .$21,425.08

Decision for complainant against respondent, Chester A. Gilbert, for $21,425.08.

For complainant: Atwood, Remington, Thomas & Levy.

For respondent: Greene, Kennedy & Greene.